834 P.2d 1143 (1992)
Raymond A. BAROS, Appellant (Employee-Claimant),
v.
STATE of Wyoming, ex rel. WYOMING WORKERS' COMPENSATION DIVISION, Appellee (Objector-Defendant).
No. 91-255.
Supreme Court of Wyoming.
July 8, 1992.
George Santini of Graves, Santini & Villemez, Cheyenne, for appellant.
Joseph B. Meyer, Atty. Gen., and Darrell V. Goodman, Asst. Atty. Gen., for appellee.
Before MACY, C.J., and THOMAS, CARDINE, URBIGKIT,[*] and GOLDEN, JJ.
*1144 MACY, Chief Justice.
Appellant Raymond A. Baros appeals from the district court's order affirming the administrative hearing examiner's decision to deny Baros' application for extended permanent total disability payments.
We affirm.
Baros raises two issues on appeal:
1. Was [Baros'] application for extended permanent total disability benefits arbitrarily denied?
2. Was [Baros] denied the right to a fair and impartial hearing as a result of the failure to consider whether he is suffering from a mental or psychic injury arising from his original work-related accident which continues to impair his earning capacity[?]
Baros was injured on October 29, 1983, in the course of his employment with the Town of Torrington. He was assisting a co-employee in locating a leak in a water service line when a backhoe bucket struck him in the abdomen. As a result of this injury, Baros was awarded temporary disability payments on April 27, 1984. The district court awarded compensation to Baros for his permanent total disability on June 7, 1985. The court found that, pursuant to the evaluations and recommendations of Baros' treating physician, Baros was unable to perform work at any gainful occupation for which he was reasonably suited by experience or training.
Baros applied for extended permanent total disability payments on September 27, 1988, and the parties entered into a stipulation and agreement on February 17, 1989. According to this stipulation and agreement, Baros would continue to receive extended permanent total disability benefits until October 31, 1989, provided that he, among other things, would participate in a duration-endurance program, a weight loss program, and a vocational rehabilitation program. Baros reapplied for extended permanent total disability payments on October 30, 1989. The Workers' Compensation Division refused to process Baros' application for benefits because he failed to comply with the February 17, 1989, stipulation and agreement.
The parties subsequently entered into a second stipulation and agreement on May 14, 1990. In this second agreement, the Workers' Compensation Division agreed to pay benefits to Baros for the months of November 1989 through October 1990 if Baros would enroll in and complete a reconditioning program at the Rocky Mountain Medical Group, P.C. in Denver, Colorado. The parties were to evaluate Baros' condition upon his completion or discharge from the program to determine whether he could return to work. Baros reported to the Rocky Mountain Medical Group in August 1990 but was discharged shortly thereafter because his test results indicated that he was not capable of completing a reconditioning program. Upon receiving the Rocky Mountain Medical Group's report, the employer objected to paying any further extended benefits after October 31, 1990, and a hearing was held on March 11, 1991.
The hearing examiner concluded:
[A]lthough Mr. Baros indeed continues to complain of debilitating pain, substantial medical testing fails to reveal any significant injury-related basis for his continuing complaints. Based upon all the evidence presented, it appears as though Mr. Baros' present earnings impairment results from his choosing an idle existence over a productive one. This Office has not been persuaded that Mr. Baros' choice arises out of the original 1983 compensable injury.
(Footnote omitted.) The district court reviewed the hearing examiner's decision and concluded that the issue was strictly factual and that sufficient evidence existed to support the hearing examiner's findings. An order affirming the hearing examiner's decision was entered on November 4, 1991.
Baros contends that the hearing examiner's decision was arbitrary because he ignored the treating physician's testimony which attributed Baros' pain and physical limitations to the original work-related injury. Baros' concern, stated in the alternative, is whether the hearing examiner's decision was supported by substantial evidence. *1145 To determine whether substantial evidence existed to support an agency decision, we employ the following test:
"We examine the entire record to determine if there is substantial evidence to support an agency's findings. If the agency's decision is supported by substantial evidence, we cannot properly substitute our judgment for that of the agency, and must uphold the findings on appeal. Substantial evidence is relevant evidence which a reasonable mind might accept in support of the conclusions of the agency."
Dougherty v. J.W. Williams, Inc., 820 P.2d 553, 555 (Wyo.1991) (quoting Trout v. Wyoming Oil and Gas Conservation Commission, 721 P.2d 1047, 1050 (Wyo.1986) (citation omitted)).
Baros, his wife, and his daughter testified at the hearing that Baros' chronic pain severely restricted his physical activities around the house. Additional evidence consisted of the deposition testimony of Wendell F. Ropp, M.D., Baros' treating physician, as well as the report of Brent V. Lovejoy, D.O., a physician at the Rocky Mountain Medical Group who evaluated Baros' condition. Dr. Ropp diagnosed Baros as suffering from a chronic pain syndrome of his low back with sciatic neuritis, an inflammatory condition of the sciatic nerve. Dr. Ropp attributed Baros' chronic pain to his original work-related injury. Dr. Ropp admitted that his findings concerning Baros, except for his finding of some localized tenderness, were in large part subjective; however, he thought that Baros had been honest regarding his physical problems. Contradicting Dr. Ropp's testimony was Dr. Lovejoy's report. Dr. Lovejoy concluded that Baros had no occupational disorder related to the 1983 accident and that his test results manifested evidence of severe symptom magnification, disuse syndrome, and probable malingering. The hearing examiner summarized both doctors' conclusions in his decision letter, but he found that Dr. Lovejoy's opinion was more compelling.
Dr. Lovejoy's report constituted relevant evidence which a reasonable mind might accept to deny Baros' application for extended benefits. The fact that the doctors' conflicting reports made it possible to reach two inconsistent conclusions does not preclude us from determining that the hearing examiner's decision was supported by substantial evidence. Toltec Watershed Improvement District v. Associated Enterprises, Inc., 829 P.2d 819, 821 (Wyo.1992); Burlington Northern Railroad Company v. Public Service Commission of Wyoming, 698 P.2d 1135, 1139 (Wyo.1985).
Baros also contends that the denial of his application for extended benefits was arbitrary because the hearing examiner refused to consider data in the record indicating that the original physical trauma caused a psychological or nervous injury. Baros cites McGuire v. State Department of Revenue and Taxation, 809 P.2d 271 (Wyo.1991), for the proposition that this Court must, when reviewing an administrative agency's decision, examine the record to determine whether the agency based its decision upon all relevant factors and whether the decision was rational. 809 P.2d at 274. According to Baros, the possibility that the original physical trauma caused a psychological injury was a relevant factor which the hearing examiner ignored.
The indications in the record of Baros' possible psychological impairment consisted of medical reports by Dr. Lovejoy and others.[1] In his report, Dr. Lovejoy found that Baros' performance on strength tests was nonphysiological and indicated symptom magnification and/or overt manipulation of the tests. Dr. Lovejoy recommended that Baros receive counseling because his physical limitations appeared to be constrained by psychological factors rather than physiological ones. Other *1146 medical reports in Baros' file likewise suggested that he get counseling. Rather than ignoring the reports' references to a possible psychological basis for Baros' impairment, the hearing examiner noted in his decision letter:
The only fact which this Office is persuaded of is that Mr. Baros is presently suffering from an extreme case of the miseries. What remains unclear to this Office, is the cause of Mr. Baros' present problems, which appear to be driven by psychological or emotional factors not sufficiently shown to be the result of the original compensable injury.

(Emphasis added and footnote omitted.) Given the hearing examiner's specific conclusion regarding a possible psychological problem, we perceive no merit in Baros' claim that the hearing examiner arbitrarily ignored a possible psychological basis for his impairment.
Finally, Baros claims that the hearing examiner denied him a fair and impartial hearing by admitting Dr. Lovejoy's report into evidence without providing an opportunity for Baros to cross-examine the doctor. This Court recently considered the issue of when a claimant in an administrative proceeding is entitled to confront and/or cross-examine a doctor whose medical report is admitted into evidence. Hansen v. Mr. D's Food Center, 827 P.2d 371 (Wyo.1992). In Hansen, we recognized that Wyoming's governing statutes, evidentiary rules, and agency regulations were consistent with the majority rule that "medical reports in a written form are admissible so long as `the elementary fairplay requirements of notice, timely furnishing of copies, and right of cross-examination if requested, are observed.'" Id. at 374 (quoting 2B ARTHUR LARSON, WORKMEN'S COMPENSATION LAW § 79.25(c) at 15-426.89 to 15-426.91 (1989)). Our review of the record in this case discloses that the hearing examiner complied with the "fairplay" requirements set forth in Hansen. The Attorney General's office mailed a copy of Dr. Lovejoy's report to Baros' attorney on September 24, 1990, some five months prior to the hearing, thus giving Baros notice and a timely copy of the report. Pursuant to Hansen's third requirement, Baros was entitled to cross-examine Dr. Lovejoy "if requested." 827 P.2d at 374. Nothing in the record indicates that Baros requested an opportunity to cross-examine Dr. Lovejoy, nor did he object at the hearing to the hearing examiner's admission of Dr. Lovejoy's report. We conclude that Baros waived his right to cross-examine the doctor and hold that the hearing examiner did not deprive Baros of a fair and impartial hearing by admitting Dr. Lovejoy's report.
Affirmed.
NOTES
[*] Chief Justice at the time of oral argument.
[1] The only medical evidence introduced at the hearing was Dr. Ropp's deposition testimony and Dr. Lovejoy's report; however, the hearing examiner's order scheduling the hearing notified the parties that he would take official notice of the entire file pursuant to Wyo.Stat. § 16-3-108(d) (1990).